IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

CASE NO.  3:05-cv-308/RV/MD

vs.

WILLIAM F. JOHNS, LANELL A. JOHNS,
MARY JERNIGAN, ESCAMBIA COUNTY TAX
COLLECTOR, STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO., and
GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

        Defendants,
_____/

**ORDER**

Now pending is Plaintiff's Motion for Entry of Order of Foreclosure (Doc. 23), and Defendant Lanell A. Johns's Motion to Dismiss Cross-Defendant (Doc. 44). The factual background and procedural history of this case --- which was at times tortured and confusing --- must be discussed in some detail before turning to the merits of these pending motions.

**I.    BACKGROUND**

    **A. Facts**

William and Lanell Johns, then husband and wife, purchased real property in Escambia County in 1987 ("the property"). They held title as tenants by the entirety. They divorced five years later, in 1992, and by operation of law they thereafter each own one-half of the property as tenants-in-common. Since 1990, Ms. Johns has lived on the property in a trailer modified with a deck and an addition; the trailer is not able to be moved. Her brother also lives on the property,

in a trailer approximately 300 feet away from hers. Mr. Johns does not reside on the property, nor does he utilize the property for any business or personal purpose. During the 16 years that she has lived there, Ms. Johns has been diagnosed with and treated for cancer on three occasions, most recently in February 2006. She is on disability from various neck and back injuries and multiple surgeries, and her disability income is $788 per month, which constitutes her sole source of income.

Mr. Johns owes the United States Government unpaid federal taxes for the years 1987-1992. Ms. Johns is not in any way responsible for this debt. This litigation involves an attempt by the government to recover these overdue taxes by foreclosing on the property.

**B. Procedural History**

On August 9, 2005, Plaintiff, the United States of America, filed its Complaint against six Defendants: Mr. and Ms. Johns, Mary Jernigan, the Escambia County Tax Collector ("Tax Collector"), State Farm Mutual Automobile Insurance Company, and Government Employees Insurance Company ("GEICO") (Doc. 1). Plaintiff alleged in its Complaint that Mr. Johns had the tax liability noted above, and it sought to reduce this claim to judgment, foreclose the tax liens, and secure the sale of the property. The other Defendants named in the Complaint were persons or entities believed to have a lien or interest in the property. Early on in this case, the Clerk of Court entered default judgments against each Defendant except the Tax Collector (Janet Holley), who was the only defendant to file an Answer to Plaintiff's Complaint (Doc. 13).

Plaintiff then filed a "Motion for Default Judgment Against Defendant William F. Johns," seeking entry of judgment for $109,746.71, as of January 31, 2006, plus other statutory additions that continued to accrue (Doc. 20). Plaintiff further requested "that this Court declare that the federal tax lien of the United States attaches to the real property owned by defendants William F. Johns and Lanell A.

*Page 3 of 12*

Johns." Subsequently, I entered an Order providing

> That defendant William F. Johns, pursuant to Title 26, United States Code, section 7402, is indebted to the United States in the amount of $109,746.71, including interest and statutory additions accrued through January 31, 2006, plus further interest and statutory additions as provided by law from January 31, 2006.

(Doc. 22).

Plaintiff thereafter filed a motion requesting that I enter an order of foreclosure on the property; Plaintiff attached a proposed Order to its motion (Doc. 23). The Tax Collector filed an objection to the wording of the proposed Order (Doc. 24), after which Plaintiff filed a response indicating the parties resolved this dispute (Doc. 25). A revised draft Order was attached to Plaintiff's response, and this Order was subsequently adopted and entered by this Court and the case was closed (Doc. 26).

After the foreclosure order was entered, Defendant Ms. Johns, through counsel, made her first appearance in this case by filing a "Motion for Relief from Judgment or Order" (Doc. 28-1). Ms. Johns indicated that she and Mr. Johns divorced in 1992, but they shared ownership of the property as "joint tenants." She had resided on the property until she became ill in or about 2004, at which time she moved in with her mother temporarily so as to be closer to the medical facility where she was seeking treatment. Ms. Johns explained her delay and inaction in this case by stating that she had "been extremely ill for a long period of time and did not recognize the significance of the government's attempt to sell her interest in the property." She filed along with her motion a document entitled "Objection to Proposed Order of Foreclosure," in which she further explained that she was diagnosed with breast cancer in November 2004 and that she underwent chemotherapy and radiation treatment from October through early 2006 (Doc. 28-2). She stated, however, that she was "in the process of moving back to the

property which is the subject of this litigation and if the court orders a sale of the property, it would result in her displacement of her normal place of residence." Inasmuch as she did not believe "the property could be sold at a public auction for an amount anywhere near its actual value," she suggested that the property be divided and that her one-half interest be separated from that portion belonging to Mr. Johns. Her residence is located on the northern one-half portion of the property, and thus she contended "it would be a simply [*sic*] matter for the property to be physically divided and to permit the government to proceed against the one-half portion."

Plaintiff filed an opposition to Ms. Johns's motion (Doc. 29), arguing that under existing law the government was permitted to foreclose on the entire parcel of land. See generally United States v. Rodgers, 461 U.S. 677, 103 S. Ct. 2132, 76 L. Ed. 2d 236 (1983). Thereafter, I entered an Order granting Ms. Johns's motion (to the limited extent that it sought to vacate the foreclosure order), and directing the Clerk of Court to reopen the case specifically so that the parties could address Plaintiff's motion requesting foreclosure (Doc. 23), which was considered to be "currently pending" (Doc. 30).

In response to the foregoing, Ms. Johns filed two documents with this Court. First, she filed a Counterclaim (against the United States Government) and a Crossclaim (against each Defendant except the Tax Collector) (Doc. 31). With this filing, Ms. Johns affirmatively requested that the property be divided so that she be "given ownership of the northern ½ of the afore-described property free and clear of any claims, liens, or encumbrances of her former husband, WILLIAM F. JOHNS, and all Cross-Defendants, and of Counter-Defendant." She also filed an "Objection to Proposed Order of Foreclosure" (Doc. 32), which was almost a word-for-word verbatim of her already-filed objection to the order of foreclosure (Doc. 28).

The following day, Ms. Johns filed a "Response to Motion for Entry of Order

of Foreclosure" (Doc. 33), which, again, was almost a word-for-word verbatim of both prior objections (Docs. 28, 32). Also on that same date --- apparently realizing that she was still technically in default and that she had not sought leave of Court prior to filing her counterclaim/crossclaim --- Ms. Johns filed a motion requesting that her default be set aside and that she be granted leave to pursue her counter and cross claims (Doc. 34). Plaintiff responded to this motion, stating that it had no objection to setting aside the default judgment; however, Plaintiff did file an objection to Ms. Johns pursuing her counter and cross claims (Doc. 36). I later granted the motion, setting aside the default judgment and stating that Ms. Johns "will be allowed to file [a] claim for partitioning" (Doc. 37).

Plaintiff then filed a motion requesting, *inter alia*, that the government have until June 30, 2006, in which to conduct additional discovery and file a supplemental brief regarding the still-pending motion for order of foreclosure (Doc. 40). I granted this motion to that limited extent and discovery continued (Doc. 42).

Meanwhile, Ms. Johns moved to dismiss GEICO (one of the cross-defendants in her crossclaim) on the grounds that GEICO no longer had an interest, right, claim, or title to the property (Doc. 44). Neither Plaintiff nor any other party has filed an objection to this motion.

Plaintiff then filed a supplemental brief in support of its motion for order of foreclosure (Doc. 46), and Ms. Johns filed a response (Doc. 47). Ms. Johns has argued that it would be inequitable and a gross injustice to allow foreclosure on the facts of this case. She has also requested an evidentiary hearing.

## II.    DISCUSSION

As set forth above in detail, I am being called upon here to decide Plaintiff's Motion for Entry of Order of Foreclosure (Doc. 23). For this motion, Ms. Johns has filed a response (Doc. 33), Plaintiff has filed a supplemental brief (Doc. 46), and

Ms. Johns has filed a supplemental response (Doc. 47).[1] Also pending is Ms. Johns's motion to dismiss GEICO as a cross-defendant (Doc. 44).

### A. Ms. Johns's Motion to Dismiss GEICO

Ms. Johns has moved to dismiss GEICO as a cross-defendant on the grounds that entity no longer has any claim or interest in the property. As previously noted, no party has filed any objection to this motion. The motion is, therefore, construed as an unopposed motion for voluntary dismissal pursuant to Rule 41(c) of the Federal Rules of Civil Procedure. The motion (Doc. 44) is hereby GRANTED.

### B. Plaintiff's Motion for an Order of Foreclosure

Preliminarily, I am able to decide the issues raised in Plaintiff's motion --- and the responses and replies thereto --- without conducting an evidentiary hearing. Therefore, to the extent Ms. Johns has requested a hearing (Doc. 47), that request is DENIED.

#### 1. *Applicable Law*

Ms. Johns readily concedes, as she must, that Plaintiff may foreclose on the property even though she is not responsible for her ex-husband's delinquent taxes. "A federal tax lien is placed on all property and rights to property when a person who is liable to pay any tax does not do so after the Goverment demands payment." Capuano v. United States, 955 F.2d 1427, 1429 (11th Cir. 1992), *citing* 26 U.S.C. § 6321. This tax lien is enforceable in a lien-foreclosure suit, such as this one, where the government seeks to force the sale of real property under 26 U.S.C. § 7403. See id.; see Rodgers, *supra*, 461 U.S. at 677. Thus, all property in

---

[1] Ms. Johns's supplemental response (Doc. 47) is currently listed on the docket sheet as "not to be considered" because it was filed without Ms. Johns seeking leave of court. However, she later filed a motion for leave to file the memorandum (Doc. 50), and the relief was granted (Doc. 51). Therefore, although the document appears on the docket sheet as an invalid submission, that is no longer the case and the memorandum may be, and has been, properly considered.

which the taxpayer has "'any right, title, or interest'" is subject to foreclosure, including property in which others claim an interest, so long as all persons "'having liens upon or claiming any interest in the property'" are joined as parties to the suit. See Rodgers, *supra*, 461 at 692-93, *quoting* 26 U.S.C. § 7403(a), (b). In such foreclosure proceedings,

> The court shall … proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, *may* decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403 (emphasis added).

As the foregoing emphasized language reveals, courts have discretion to refuse foreclosure when equity dictates. See, e.g., Rodgers, *supra*, 461 U.S. at 706 (holding that "§ 7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and that some limited room is left in the statute for the exercise of reasoned discretion"); United States v. Boyd, 246 F.2d 477, 481 (5th Cir. 1957) (recognizing that the use of "may" in section 7403, instead of "shall," indicates that "Congress intended that the court function with the full traditional flexibility of the Chancellor"); see also Kathryn Kelley, Comment, *Enforcing the Federal Tax Lien Against Jointly-Owned Property: The Rodgers Equitable Discretion Test*, 35 Syracuse L. Rev. 1321, 1342 n.140 (1984) (collecting multiple cases for the proposition that "section 7403 has often been interpreted by courts to permit the exercise of equitable discretion"). However, although district courts have discretion in deciding whether to order foreclosure, as specifically noted in Rodgers, this discretion is "limited" and should be "exercised rigorously and sparingly, keeping in mind the Government's paramount interest in

prompt and certain collection of delinquent taxes." Rodgers, *supra*, 461 U.S. at 711. With this balancing in mind, the Supreme Court of the United States has outlined the procedure that a court should follow in determining whether to exercise its discretion to deny a foreclosure. A court should "take into account both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." Id. at 709. The Rodgers opinion then goes on to describe four specific factors, discussed further *infra*, that a court should take into account in deciding whether to exercise its equitable discretion under section 7403. Significantly, however, these four factors are not to be used as a "mechanical checklist" in all situations. See id. at 711. Instead, these non-exhaustive factors are merely illustrative of the general types of concerns that should guide a district court. Ultimately, the court's decision should rest on "common sense" and consideration of the "special circumstances" of each specific case. Id.; see also id. at 706 (district court should undertake a "particularized equitable assessment of the case").

With the above in mind, I will now turn to and consider the specific facts of this litigation.

### 2. *Application of the Law to the Facts of this Case*

As noted above, the Supreme Court in Rodgers set forth a non-exhaustive list of four factors that a district court should consider in determining whether to exercise its equitable discretion to deny a foreclosure. No one factor is dispositive. First, a court should consider whether and to what extent the government's financial interests will be prejudiced if it were relegated to a forced sale of the partial interest of the property actually liable for the unpaid taxes. Second, a court should consider whether the third party with a non-liable separate interest in the properly would, in the normal course of events, have a legally recognized expectation that the separate property would not be subject to forced sale by the

delinquent taxpayer or his creditors. Third, a court should consider the prejudice to the non-liable third party, both in "personal dislocation" costs and in "practical undercompensation." And fourth, a court should consider the relative character and value of the non-liable and liable interests in the property, which takes into account the respective possessory interests in the property. Rodgers, *supra*, 461 U.S. at 710-11; United States v. Persaud, 420 F. Supp. 2d 1263, 1268 (M.D. Fla. 2006). Each factor will be discussed in turn.

As for the first factor, Plaintiff argues that it will be prejudiced if it is forced to sell only a portion of the land. This is because, according to Plaintiff, the southern half of the property --- the portion suggested and offered by Ms. Johns --- is "considerably less valuable than the northern half" due to flooding and drainage problems. Plaintiff has supported this claim of prejudice with expert affidavits. Ms. Johns has made no real attempt to dispute this assertion, except to say that the experts who filed their affidavits "did not even examine the entire parcel of property and apparently viewed it from the highway to form their opinions." Ms. Johns's claim in this regard is insufficient. On this record, therefore, I find that the first factor weighs in favor of the government.

The second factor --- the third-party's expectations concerning the prospect of a forced sale --- obviously favors Ms. Johns. Article X, Section 4(a), of the Florida Constitution specifically protects homestead property from a forced sale by creditors. McKean v. Warburton, 919 So.2d 341, 343-44 (Fla. 2005). The homestead laws in Florida apply to trailers and other mobile homes. Southern Walls, Inc. v. Stilwell Corp., 810 So.2d 566, 571 (Fla. 5th DCA 2002). Consequently, I find that Ms. Johns had a legally recognized expectation that the property on which she has lived for the past 16 years would not be foreclosed upon in order to satisfy a debt owed by her ex-husband, from whom she has been divorced for 14 years. See Persaud, *supra*, 420 F. Supp. 2d at 1268-69 (finding

that, for purposes of the second Rodgers factor, a wife who was estranged from her delinquent taxpayer husband had a legally recognized expectation under Florida law that her homestead would not be subject to foreclosure).[2]

As for the third factor, I must consider the prejudice to the non-liable third party. Even though it is clear and undisputed that Ms. Johns would be entitled to her rightful share of the proceeds of sale, "financial compensation may not always be a completely adequate substitute for a roof over one's head." See Rodgers, *supra*, 461 U.S. at 704. On the facts of this case, it is clear this factor weighs heavily in favor of Ms. Johns. As noted, Ms. Johns has lived in a trailer on the property (with her brother in a nearby trailer) for 16 years, excepting a brief period of time during which she was living with her mother and receiving chemotherapy and radiation treatments for cancer. In fact, she received this cancer treatment as recently as 8 months ago. She does not work and is presently on disability, from which she receives a total of $788 per month. She has no other source of income. Her only other assets include a savings and checking account with a $350 balance.

I have no difficulty whatsoever concluding on the facts of this case that it would constitute a significant hardship and result in substantial prejudice if Ms. Johns were forced out of her home so that the government could collect on a 14-year old tax debt for which she is not liable. This is similar to United States v. Jensen, 785 F. Supp. 922 (D. Utah 1992), where a husband and wife were owners of property as tenants-in-common. The husband was liable for a delinquent tax debt, and the government attempted to foreclose on the property. His wife had

---

[2] It is of no moment that Rodgers itself authorizes a forced sale, and thus would otherwise trump state homestead law. Rodgers makes clear that the relevant question in this context is whether the third party would have a legally recognized expectation of non-sale "in the normal course of events (*leaving aside § 7403 and eminent domain proceedings* …)." Rodgers, *supra*, 461 U.S. at 710-11 (emphasis added).

lived in a house on the property for 20 years. She was also suffering from cancer and was generally in poor health. She lacked a professional career and had insufficient assets to purchase another home. The court recognized that the wife would be entitled to her share of the proceeds when the property was later sold, but it also recognized that it could not be "'blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head.'" See id. at 924, *quoting* Rodgers, *supra*, 461 U.S. at 704. The district court observed that while "simply losing one's place of abode alone, despite its significant impact, does not necessarily justify the court in depriving the government of its interest in a prompt foreclosure sale of the property," the particular facts of that case (which included the third-party's health problems and lack of assets) warranted special considerations:

> Due to Celia Jensen's health and care requirements, the court must conclude that depriving her of the roof over her head would be a significant hardship to her. The court finds that a substantial likelihood, not a mere possibility, exists that an innocent third party, Celia Jensen, will be unduly harmed by a foreclosure sale of the entire property.

Id. at 925; see also United States v. Johnson, 943 F. Supp. 1331 (D. Kan. 1996) (denying foreclosure on summary judgment because, *inter alia*, the non-liable spouse would have been forced out of the house where she resided for 38 years; furthermore, because she was on a limited and fixed income, "it is unlikely that [her] share of the proceeds from the forced sale of her homestead residence would be an adequate substitute for the roof over her head"); cf. United States v. Jones, 877 F. Supp. 907 (D.N.J. 1995) (foreclosure denied, *inter alia*, where it would have displaced a non-liable housewife who resided in the home for 17 years and had not been employed outside the home in several years; holding that to displace the wife, and her minor son who resided with her, "in order to satisfy a debt owed solely by

her husband presents a grossly unfair solution").

Under the fourth and final Rodgers factor, I must consider "the relative character and value of the non-liable and liable interests held in the property." *Supra*, 461 U.S. at 711. It is obvious this factor also weighs in favor of Ms. Johns as she has resided in and had possession of the property for the past 16 years. See, e.g., Persaud, *supra*, 420 F. Supp. 2d at 1269 (final Rodgers factor weighed in favor of non-liable spouse who maintained "actual possession" of the property).

On balance, based on my application and consideration of the Rodgers factors and my "particularized equitable assessment of the case," I conclude that the entire property should not be foreclosed. In reaching this decision, I recognize and appreciate the government's strong interest in the efficient collection of delinquent taxes. But, the taxes at issue in this case are the sole obligation of Mr. Johns, who does not reside on the property and who will be relatively unaffected by the foreclosure. It is only Ms. Johns who will be significantly affected. To allow the government to foreclose on the land --- and in the process displace an unemployed, disabled woman of modest and limited means who has lived on the property for 16 years while battling repeated bouts of cancer --- would be an extremely inequitable and offensive result.

### III.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Entry of Order of Foreclosure (Doc. 23) is DENIED. Defendant Lanell A. Johns's Motion to Dismiss Cross-Defendant (Doc. 44) is GRANTED.

**DONE and ORDERED this 27th day of October, 2006.**

   */s/ Roger Vinson*
   **ROGER VINSON**
   **Senior United States District Judge**

Case No.: 3:05-cv-308/RV/MD